CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 06 2015

JULIA C. DUDLEY, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

JULIA N. ROSE,

Plaintiff,

v.

J. CHRISTIAN BOZORTH, et al.,

Defendants.

Civil Action No. 3:14-CV-00035

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Chief United States District Judge

Plaintiff Julia N. Rose filed this action against Kanawha-Gauley Coal and Coke Company ("Kanawha Gauley" or the "Company"), a coal and timber company incorporated in West Virginia; Harewood Properties, LLC ("Harewood"), a wholly-owned subsidiary of Kanawha-Gauley; J. Christian Bozorth, Kanawha-Gauley's president; and Christopher E. Lee, Kanawha-Gauley's vice-president. The matter is presently before the court on the defendants' motions to dismiss for failure to state a claim, as well as Rose's motion for leave to amend the complaint. For the following reasons, the court will deny Rose leave to amend and grant the defendants' motions to dismiss.

**Factual and Procedural Background**

The following facts are accepted as true at this stage in the proceedings. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

Since 2008, Bozorth has invested Kanawha-Gauley funds into a number of "speculative" business endeavors, including high-risk unregistered securities offered by various start-up companies. See, e.g., Am. Compl. ¶¶ 16-75, Docket No. 28. These unregistered securities could be

sold only to "accredited investors."[1] Id. ¶ 12. The complaint alleges that Kanawha-Gauley and Harewood do not qualify as accredited investors, but that Bozorth falsely certified that they so qualified in order to complete these purchases. According to the amended complaint, Bozorth's actions "violated the Investment Policy" adopted by Kanawha-Gauley, "which requires that a duly appointed Investment Committee…review prospective investments, and that the Board of Directors approve them by majority vote." Id. ¶ 28. The complaint alleges that Bozorth and Lee made these investments against Kanawha-Gauley's best interests in order to "cultivate or reward their personal or business relationships with the persons involved with the start-up companies, and personally to realize monies and/or shares of stock from the start-up companies they invested in." Id. at ¶¶ 28-29.

A number of Kanawha-Gauley shareholders, including Rose, repeatedly voiced concerns over Bozorth's investments into unregistered securities. Id. ¶ 110. In response, the Company's Board of Directors (the "Board") formed an Investment Committee to review the legality and propriety of these investments. Id. David Campbell, a financial advisor, was "appointed to serve as a non-voting advisor" to that committee. Id. Campbell allegedly advised Bozorth, Lee, and the Board that Kanawha-Gauley and Harewood did not qualify as accredited investors; however, Bozorth and Lee "ignored" this warning. Id. ¶¶ 111-112. The dissident shareholders continued to voice concerns. Id. ¶¶ 113-115. In fact, at the 2014 shareholders' meeting, these shareholders elected an individual "who was not a shareholder" to the Board of Directors "in an attempt to bring their concerns to the Board's attention." Id. at ¶ 115. Although this new director continued

[1] A corporation qualifies as an "accredited investor" under federal securities laws if, among other things, it is "not formed for the specific purpose of acquiring the securities offered" and has "total assets in excess of $5 million." 17 C.F.R. § 230.501.

to challenge Bozorth's investments, the defendants continued to insist that the investments were safe and legal. Id. ¶ 116.

After the 2014 shareholders' meeting, Rose requested to see Kanawha-Gauley's books and records; however, she was denied access and ultimately had to obtain a state court order to review them. Id. ¶¶ 117-120. Thereafter, Rose demanded that the Board call a special shareholders' meeting to consider removing Bozorth and Lee. That meeting was held on August 11, 2014, at which time Rose's proposal was defeated, with 1,351 shares voting to remove Bozorth and Lee and 2,923 shares voting to retain them. Id. ¶ 121. Rose then directed her attorney to write a letter to the Board "outlining her discovery of Bozorth's false certifications regarding accredited investor status." Id. ¶ 122. According to the amended complaint, this July 17, 2014 letter "demanded that Bozorth and Lee be removed, and that suit be initiated against [them] to recover the improperly-expended funds." Id. ¶ 122. The amended complaint alleges that, on August 2, 2014, the "disinterested Board members" agreed to retain independent legal counsel to investigate Rose's concerns, but that "[a]s of the filing of this suit, the Board has not taken the action demanded by Rose." Id. ¶¶ 122-23.

Rose first filed this lawsuit on August 19, 2014, "on her own behalf and derivatively as a shareholder of Kanawha-Gauley," asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., which creates a private civil action to recover treble damages for injury "by reason of a violation of" its substantive provisions. See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481 (1985). As relevant here, RICO makes it unlawful "for any person employed by or associated with any enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Rose claims that each of Bozorth's false

certifications of accredited investor status constitutes a separate act of mail or wire fraud, which together form a "pattern of racketeering activity" in violation of RICO.[2] Rose seeks compensatory damages, treble damages pursuant to 18 U.S.C. § 1964(c), punitive damages in the amount of $350,000, and an award of attorney's fees and costs.[3]

The defendants moved to dismiss Rose's complaint. Before the court could consider those motions, however, Rose filed a motion seeking leave to amend. See Docket No. 23. The court granted that motion, with the defendants' consent, on December 18, 2014. See Docket No. 25. Rose filed an amended complaint on January 8, 2015. See Docket No. 28. The defendants again moved to dismiss, arguing that the amended complaint failed to state a claim for relief and also failed to allege sufficient facts to satisfy Rule 23.1 of the Federal Rules of Civil Procedure. The court held a hearing on these motions on April 20, 2015. After the court expressed doubt as to whether Rose's complaint could withstand the defendants' motions with respect to Rule 23.1, Rose's counsel sought leave to amend her complaint to allege additional facts in support of her derivative claim. The court provided Rose with fourteen days "to file a written motion for leave to amend." Docket No. 40. It stated that "[t]hereafter, the court will decide whether to permit [Rose] to amend her complaint. If the court denies leave to amend, it will then rule on the defendants' pending motions to dismiss." Id.

[2] Rose also alleges that Bozorth committed one predicate act of bank fraud, see Am. Compl. ¶¶ 84-91, and that Bozorth and Lee committed an additional act of mail fraud when they mailed a letter containing false statements to Kanawha-Gauley shareholders. Id. ¶¶ 92-102.

[3] Although Rose originally sought damages individually on her own behalf and also derivatively on behalf of Kanawha-Gauley, she has since agreed that she has no individual claim here. See Docket No. 33 at 8; see also NCNB Nat'l Bank of North Carolina v. Tiller, 814 F.2d 931, 937-38 (4th Cir. 1987), overruled on other grounds by Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990) ("Although the stockholders of a corporation suffer when the corporation incurs a loss, only the corporation may vindicate its rights. An indirectly injured party should look to the recovery of the directly injured party, not the wrongdoer[,] for relief. This principle applies to RICO cases.").

In accordance with the court's order, Rose filed a motion seeking leave to amend her complaint on May 4, 2015. See Docket No. 43. Rose did not submit a full proposed amended complaint for the court's consideration; instead, she provided an "addendum" of additional allegations designed to satisfy Rule 23.1 in greater detail. See Docket No. 44-3. This addendum re-alleges that Rose sent a letter to the Board on July 17, 2014, demanding that it investigate her concerns with respect to a number of Kanawha-Gauley investments and that it "cause the Corporation to initiate litigation, if necessary, to recover damages" from Bozorth and Lee. Id. ¶ 25. Rose demanded that the Board inform her how it intended to proceed within 14 days. Id. The Board did not respond within that time period, which Rose "interpreted as an intention to do nothing." Id. ¶¶ 26-26.

Rose's addendum further alleges that Board members John Boston, Andrew Gillis, and William Johnson discussed Rose's letter at a Kanawha-Gauley board meeting on August 2, 2014. Id. ¶ 27. Bozorth and Lee did not participate in this discussion, given the nature of Rose's concerns. Id. At that time, Gillis and Johnson told Boston that they would suggest outside legal counsel to investigate Rose's concerns by August 8, 2014, but they failed to do so by that date. Id. During a subsequent board meeting on August 16, 2014, Gillis and Johnson "suggested that no further action was needed," given the recent shareholders' decision not to remove Bozorth and Lee as officers or directors. Id. ¶ 28. Boston opposed this suggestion and insisted that the investigation continue. Id. Sometime thereafter – without consulting Boston – Gillis and Johnson formed a "special committee" to address Rose's concerns and appointed two attorneys as "special counsel" to investigate. Id. ¶ 29.

According to the addendum, the special counsel reported their findings and recommendations, including their conclusion that litigation was not in the Company's best

interests, to Gillis and Johnson on September 23, 2014. Id. ¶ 30. Johnson approved the special counsel's report that day; Gillis approved it three days later. Id. ¶ 31. According to Rose, the report "fails to even address several key demands made by Rose in her letter." Id. ¶ 30. Rose alleges that Gillis and Johnson's prompt approval of the report constitute a wrongful refusal of Rose's demands in violation of their fiduciary duties to the Company. Id. ¶ 35.

The defendants filed written opposition to Rose's motion for leave to amend, and the court heard argument on this matter on July 1, 2015. Rose's motion for leave to amend, and the defendants' earlier motions to dismiss, have been fully briefed. They are now ripe for review.

## Standards of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiff's complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006). When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court, however, is "not so bound by the plaintiff's legal conclusions." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss, the complaint must contain "sufficient factual matter…to 'state a claim…that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663. In pleading fraud, however, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). These "circumstances" include "the time, place, and contents of the false representations, as well

as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Rule 15(a) of the Federal Rules of Civil Procedure provides that, once a responsive pleading has been served, a plaintiff must seek leave of court in order to amend his complaint. See Fed. R. Civ. P. 15(a). Although the decision regarding whether to allow a plaintiff to amend "rests within the sound discretion of the district court," Medigen of Kentucky, Inc. v. Pub. Serv. Comm'n, 985 F.2d 164, 167 (4th Cir. 1993), Rule 15 provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman, 371 U.S. at 182).

**Discussion**

After careful consideration of Rose's first amended complaint, as well as the additional allegations set forth in her proposed addendum thereto, the court concludes that Rose cannot satisfy the heightened pleading standard applicable to derivative actions. The court will therefore deny Rose's motion to amend for futility. See Elrod v. Busch Ent. Corp., 479 F. Appx. 550, 551 (4th Cir. 2012) ("An amendment [is] futile if the complaint, as amended, would not withstand a motion to dismiss."). Accordingly, the court will grant the defendants' pending motions to dismiss Rose's first amended complaint.

The derivative action is designed "to enforce a right that [a] corporation... may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1(a). It serves as a "potent tool[] to redress the conduct of torpid or unfaithful [corporate] management." Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1983), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del 2000) (stating that "[t]he derivative action developed...to enable shareholders to sue in the corporation's name where those in control of the company refused to assert a claim belonging to it"). A derivative suit is nonetheless an "extraordinary procedural device, to be used only when it is clear that the corporation will not act to redress the alleged injury to itself." Stepak v. Addison, 20 F.3d 398, 402 (1st Cir. 1994) (internal citation omitted).

Accordingly, Rule 23.1 of the Federal Rules of Civil Procedure imposes heightened pleading standards on plaintiffs asserting derivative claims. That rule provides that any complaint purporting to be a derivative action must "state with particularity (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reason for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). This demand requirement "emerges from the basic principle of corporate governance providing that the board of directors retains the power to direct a business's policies and actions" including "decisions of whether to pursue lawsuits in the interest of the corporation or shareholders." Morefield v. Bailey, 959 F.Supp.2d 887, 897 (E.D. Va. 2013). Thus, "[p]leading both the [plaintiff's] demand [on the corporation] and the corporation's refusal to comply therewith is a necessary precondition to bringing a shareholder derivative action." Id. at 895.

At the outset, the court notes that the parties initially disputed whether Rose's July 2014 letter constituted a demand under Rule 23.1 at all. See, e.g., Docket No. 8 at 8-9; Docket No. 14

at 3-4. In their more recent arguments, however, the parties appear to assume as much and instead focus on whether the Board properly considered and refused that demand. See Docket No. 44 at 4-6; Docket No. 45 at 6-7; Docket No. 46 at 2-11; Docket No. 48 at 3-4. For purposes of this decision, therefore, the court assumes without deciding that Rose's letter was a demand under West Virginia law.[4] The court will instead focus its attention on whether Rose's proposed allegations sufficiently demonstrate that the Board's refusal of that demand was wrongful. See Levine v. Smith, 591 A.2d 194, 212 (Del. 1991), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000) (finding allegations that the plaintiff "made demand and the board wrongfully refused her demand to take action" satisfy Rule 23.1).

Corporate directors are entitled to "exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." Daily Income Fund v. Fox, 464 U.S. 523, 532-33 (1984); see Mercier v. Blankenship, 662 F.Supp.2d 562, 574 (S.D. W.Va. 2009) ("[T]he key principle in this area of jurisprudence [] is that the directors are entitled to a presumption that they were faithful to their fiduciary duties" in refusing plaintiff's demand for litigation). Thus, to state a viable derivative claim, a plaintiff who alleges that a corporate board wrongfully refused her must "allege and prove facts rebutting the long-standing presumption...of the validity of an exercise of business judgment." Allison v. Gen. Motors Corp., 604 F.Supp. 1106, 1122 (D. Del. 1985). Specifically, the plaintiff must allege particularized facts suggesting that "the board

[4] Federal Rule 23.1 outlines pleading requirements for derivative suits, but it "stops short of imposing any requirements of the demand's dimensions or contents." Morefield, 959 F.Supp.2d at 895. "In federal derivative shareholder suits, the state of incorporation defines the standard for evaluating sufficiency of demand allegations." Id. West Virginia law thus controls here. West Virginia Rule of Civil Procedure 23.1 tracks Federal Rule 23.1; however, only limited West Virginia case law considers that rule. See Ward v. Hotel Randolph Co., 63 S.E. 613 (W. Va. 1909); Moore v. Lewisburg & R.E. Ry. Co., 93 S.E. 762 (W. Va. 1917). The court therefore also considers case law interpreting other similar state rules to be instructive.

either was tainted by self-interest, acted in bad faith or fraudulently, or, in certain contexts, through gross negligence failed to reach an informed decision." Id. The court finds that Rose has failed to do so in this case.

First, Rose has not alleged sufficient facts to suggest that the Board was motivated by self-interest or otherwise lacked independence. A board lacks independence when it "is either dominated by an officer or director who is the proponent of the challenged transaction, or [when] the board is so under that director's influence that its discretion is sterilized." Mercier, 662 F.Supp.2d at 575. Bozorth and Lee – the two board members who necessarily had a personal stake in whether Kanawha-Gauley filed suit in accordance with Rose's demand – did not participate in the Board's discussion of Rose's demand, the appointment of the special counsel to investigate the demand, or the adoption of the special counsel's recommendation not to file suit. See Addendum ¶ 27. Rose also fails to allege facts suggesting that the special counsel's investigation, or Gillis and Johnson's adoption of the special counsel's report, was somehow influenced by Bozorth or Lee. Indeed, Rose explicitly alleges that Gillis had questioned Bozorth's investments on prior occasions, which implies that he operated independently. See id. ¶ 13. Rose's allegations simply do not "suggest a reasonable doubt that the Board was acting in a disinterested and independent manner" when it rejected Rose's demand. Lewis v. Hilton, 648 F. Supp. 725, 728 (N.D. Ill. 1986).

Rose likewise fails to raise reasonable doubts regarding whether Gillis and Johnson acted in good faith. See Allison, 604 F.Supp. at 1122. Without some particularized factual allegations to the contrary, the court must presume that "the directors of a corporation acted…in good faith and in the honest belief that the action taken was in the best interests of the company." Levine, 591 A.2d at 207 (internal quotation marks and citations omitted); see W. Va.

Code § 31D-8-830(a). In her proposed allegations, Rose appears to suggest that Gillis and Johnson's failure to "consult" with Boston reflects bad faith. See Addendum ¶ 29. But, as the defendants note, "[t]he law merely prohibits the inclusion of interested directors, not the exclusion of disinterested ones." Docket No. 46 at 4. Gillis and Johnson, a majority of Kanawha-Gauley's disinterested directors, were entitled to consider and reject Rose's demand. See Abramowitz v. Posner, 513 F.Supp. 120, 126-29 (S.D.N.Y. 1981). Rose's addendum does not include any particularized allegations of deception or underhandedness; the court simply cannot infer bad faith under such circumstances.

Rose also fails to sufficiently allege that Gillis and Johnson made an uninformed decision. Directors "have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them." Aronson, 473 A.2d at 812. Directors fail to do so only when they make an uninformed decision through "gross negligence." Id. According to Rose's allegations, Gillis and Johnson retained independent special counsel to investigate her demands. That special counsel investigated the concerns that Rose outlined in her demand letter, including whether Bozorth's investments were ultra vires; whether Kanawha-Gauley qualified as an "accredited investor;" whether and to what extent Bozorth's investments harmed the Company; and whether Kanawha-Gauley should support or resist Rose's derivative lawsuit. See Docket No. 29-2. Ultimately, special counsel recommended that this litigation was not in the best interests of the Company. See id. at 11-12. Under West Virginia law, Gillis and Johnson were entitled to rely on this advice. See W. Va. Code § 31D-8-830(e) (providing that corporate directors are entitled to rely on the advice of legal counsel "as to matters involving skills or expertise [they] reasonably believe[d]" to be within that counsel's "professional or expert competence").

Rose argues that the special counsel's report fails to consider every question posed in her demand letter, making Gillis and Johnson "grossly uninformed" by it. See Addendum ¶¶ 30, 33. The court is constrained to disagree. "There is no prescribed procedure or form a Board must follow when responding to a demand letter." Lambreht v. O'Neal, 773 F.Supp.2d 330, 348-49 (S.D.N.Y. 2011); see Baron v. Siff, No. 15152, 1997 WL 666973, at *10 (Del. Ch. Oct. 17, 1997) ("The refusal letter's...failure to contain a point-by-point response to all allegations in the demand letter does not stand for the proposition that the Board did not consider the demand before refusing it."). Here, the special counsel's report outlines the Board's duties in connection with Rose's demand and directly addresses the substance of her concerns. See Docket No. 44-2 at 4-11. Ultimately, special counsel concluded that supporting Rose's lawsuit was not in the Company's best interests for a number of reasons, including the expense of litigation, the likelihood of recovery, the lack of insurance coverage available, and other factors. Id. at 12. The court concludes that Gillis and Johnson reasonably informed themselves by relying on this report. See Lambreht, 773 F.Supp.2d at 348-49 (finding corporate board reasonably informed when its refusal letter addressed the substance of plaintiff's demand letters and cited a "cost-benefit analysis" in concluding that pursuing plaintiff's demand was not in the company's best interest).

Because Rose's proposed additional allegations do not satisfy the heightened pleading requirements of Rule 23.1, the court concludes that such amendment would be futile. The court will therefore deny Rose leave to amend the complaint. See Elrod, 479 F. Appx. at 551.

Accordingly, the court will grant the defendants' previously-filed motions to dismiss the complaint for failure to comport with Rule 23.1.[5]

## Conclusion

For the reasons stated, the court will deny Rose leave to amend the complaint and grant the defendants' motions to dismiss. The court will deny the defendants' motion for sanctions. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of August, 2015.

Chief United States District Judge

[5] Bozorth and Lee also moved to dismiss Rose's complaint based on the Private Securities Litigation Reform Act ("PSLRA"), which amended 18 U.S.C. § 1964 to eliminate securities fraud from the list of predicate acts that can form the basis of a private civil RICO claim. See Docket No. 30 at 6-8. That section now provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a [RICO] violation." 18 U.S.C. § 1964(c). The court need not address this argument here, as the court has already found that Rose's complaint must be dismissed for failure to satisfy Rule 23.1.

Bozorth and Lee have also filed a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. See Docket No. 52. Rule 11(b) requires any attorney presenting a pleading to the court to certify that, to the best of his or her knowledge, "the claims, defenses, and other legal contentions [asserted therein] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The decision of whether to impose sanctions rests within the discretion of the district court. See Morris v. Wachovia Securities, Inc., 448 F.3d 268, 277 (4th Cir. 2006). In their motion, Bozorth and Lee ask the court to sanction Rose's counsel based on the fact that the RICO claim asserted in the first amended complaint is premised on Bozorths' alleged fraud "actionable in connection with the purchase or sale of securities," which is "prohibited by the plain language of 18 U.S.C. § 1964(c)." Docket No. 52 at 3.

The court agrees with Bozorth and Lee that significant persuasive authority suggests that the PSLRA would likely prevent Rose from asserting a viable civil RICO claim. However, neither the Supreme Court nor the Fourth Circuit has explicitly construed the phrase "actionable as fraud in the purchase or sale of securities" to include the precise type of allegations made in the first amended complaint. See Morris, 448 F.3d at 277 (noting that "[t]he legal argument must have absolutely no chance of success under the existing precedent" to warrant sanctions under Rule 11); Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984, 988 (4th Cir. 1987) (affirming imposition of Rule 11 sanctions where clear, binding precedent showed that the plaintiff could not prevail on its claim). The court finds Rule 11 sanctions unwarranted here, so it will deny the defendants' motion.